UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

DAVID A. STEWART,                                        Case No.: 14-03177

    *Debtor.*

And

In re:

TERRY P. STEWART,                                        Case No.: 14-03179

    *Debtor.*

**OPINION DENYING DEBTORS' MOTIONS TO DISMISS AND ORDERING THE ENTRY OF ORDERS FOR RELIEF**

Richard M. Gaal, Attorney for Petitioning Creditor, Mobile, AL
E. Russell March, III, Attorney for Debtors, Mobile, AL

This matter is before the Court on the Debtors' motions to dismiss. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the Order of Reference of the District Court. This is a core proceeding and the Court has the authority to enter a final order. For the reasons indicated below, the Court is denying the Debtors' motions to dismiss and ordering the entry of orders for relief. For the reasons indicated below, the court is denying the motions to dismiss and ordering entry of orders or relief.

FACTS

On September 30, 2014, SE Property Holdings, LLC ("SEPH"), the Petitioning Creditor, filed these involuntary chapter 7 petitions against the Debtors, David A. Stewart ("DStewart") and Terry P. Stewart ("TStewart").

1

DStewart is self-employed. Based in Edmond, Oklahoma, his business, Raven Resources, LLC holds oil and gas interests and real estate investments. He has three fulltime employees and his wife helps with some aspects of the business. Linda McGuire serves as DStewart's in house counsel and office manager. Dan R. Neale is in charge of IT and accounting. Rihanna Wealty is the secretary. DStewart spends most of his time traveling to oversee well maintenance and put together business opportunities. Through his business, DStewart has ownership interests in several entities including OklaMiss, Shallene Sense Development, P & P Acquisitions, and ZLM Acquisitions.

a. ZLM Bankruptcy and SEPH Debt (Phoenix West, Neverve, ZLM)

1. ZLM Guarantees

DStewart owns 80% of ZLM Acquisitions, LLC ("ZLM Acquisitions"), a holding company which owns Zeke's Landing Marina, LLC ("ZLM") in Orange Beach, Alabama. Tom Steber was a co-owner of ZLM Acquisitions and the manager of the marina. On June 28, 2007, DStewart executed a guaranty on a $16,000,000.00 loan from SEPH[1] to ZLM Acquisitions and ZLM. The guaranty provided that DStewart's liability was limited to $12,800,000.00 and that SEPH could enforce the guaranty without first going after ZLM Acquisitions or ZLM.

On February 20, 2014, DStewart authorized local counsel to file chapter 11 petitions in this Court on behalf of ZLM Acquisitions and ZLM. Tom Steber signed the schedules. In ZLM Acquisition's bankruptcy, schedule D indicated that the debt owed to SEPH was $15,589,035.43 and that the properties securing the loan ("Units A, B, C, D, E, and F of Zekes Business Condominium & various lots in Block 4, First Addition to Chicago Gulf Beach Company Subdivision") were valued at $2,518,242.00 leaving a deficiency of $13,070,793.43. Schedule D did not indicate that this debt was contingent, disputed, or unliquidated. In ZLM's bankruptcy,

---

[1] SEPH is the successor to Vision Bank which originally held the guaranty.

schedule D indicated that the debt owed to SEPH was $15,589,035.43 and that the properties securing the loan ("26619 Perdido Beach Boulevard . . .[and] 26650 Perdido Beach Boulevard") were valued at $4,644,500.00 leaving a deficiency of $10,944,535.43. Schedule D did not indicate that this debt was contingent, disputed, or unliquidated. As of the filing of the involuntary petition, the debt owed to SEPH had not been satisfied.

    2. Neverve Guarantees

On February 15, 2005, DStewart, George W. Skipper, III, ("Skipper") and Rick A. Phillips guaranteed a loan from SEPH to Neverve, LLC ("Neverve") in the principal amount of $16,000,000.00. On June 20, 2006, in conjunction with a modification of the underlying promissory note, TStewart also executed a guaranty of this debt. On August 24, 2011, Skipper signed a "Consent and Agreement" acknowledging that the debt was $14,296,576.90. DStewart and TStewart each executed a "Consent and Agreement" on August 31, 2011 acknowledging the same. These guarantees allow SEPH to proceed against the guarantors without first proceeding against Neverve. Neverve defaulted on the loan. At trial, DStewart testified that he had not yet paid any of the debt because it was in litigation.

On October 08, 2012, Skipper filed a chapter 11 petition in this Court. The Stewarts each filed a proof of claim in his bankruptcy for $21,924,560.87 on April 11, 2013. The basis of their claims was liability arising from their Neverve guarantees.

The Stewarts' Neverve guarantees have been in litigation in the Southern District of Alabama. On May 19, 2014, Judge Butler entered an order granting summary judgment in favor of SEPH stating "SEPH is entitled to recover the entire amount of Neverve's indebtedness (plus attorney's fees and costs)." At the time that this order was entered, Neverve's indebtedness was $23,868,569.06. Though the amount of the liability is still being litigated, the liability itself is

not. In District Court filings made subsequent to Judge Butler's May 19th order, the Stewarts acknowledged that "a substantial 8-figure judgment (in some amount)" would eventually be entered against them.

    3. Phoenix West Loans

In February of 2006, DStewart took out two loans—loan 91022 in the principal amount of $1,250,000.00 and loan 91227 in the principal amount of $1,750,000.00 (collectively referred to as the "Phoenix West" loans). DStewart defaulted on the loans in November 2009. The debt has still not been satisfied.

While the amounts of the Stewarts' debts to SEPH are still being litigated, their guarantees, the proofs of claim filed in Skipper's bankruptcy, Judge Butler's May 19, 2014 order establishing liability together with the Stewarts' admission that a "substantial 8-figure judgment (in some amount)" will be entered against them leads this Court to find that the Stewarts owe SEPH in excess of $10,000,000.00 on account of the Neverve guarantees.  Therefore, for purposes of determining SEPH's eligibility to file involuntary petitions against the Stewarts, the Court finds that the Stewarts owe SEPH upwards of $10,000,000.00.

In addition, DStewart has other obligations to SEPH as described above. Based on his various guarantees and loans with SEPH, DStewart listed a potential liability to SEPH in the amount of $36,848,287.56 which he disputes as to amount. TStewart is only personally obligated to SEPH on the Neverve guaranty, so she listed her potential liability to SEPH at $17,959,930.36, but she disputes that she owes the full amount.

                                  b. Kirkpatrick Bank

The Stewarts have been clients at Kirkpatrick Bank in Edmond, Oklahoma for roughly sixteen years. George M. Drew, Jr. ("Drew") has been the President and CEO of Kirkpatrick Bank for seven years.

1. Loan #827000, the Phoenix IX Condo #1508

The Stewarts are borrowers on the Phoenix Condo loan, the subject property of which is owned by Oklamiss. On August 8, 2014, Kirkpatrick Bank generated a "Loan Past Due Notice" on loan #827000. It stated that $595,752.81 had come due on July 31, 2014. This was an automatically generated notice that also said "If you have already made this payment, please disregard this notice . . . ." DStewart testified that the full amount of the loan has not come due because, for the last seven months, the bank has renewed the loan every thirty days. Drew testified that the bank has made about six of these renewals on this loan over the last year. According to him, the renewals have been necessary due to some title issues on another loan regarding land in Gulf Shores. When the title issues are resolved, the bank expects to extend the maturity date of the loan for a year. Drew further testified that while the Stewarts have not been more than thirty days late with a payment, they have been late. However, he also offered that the system that generates "Loan past Due Notices" is not aware of renewal negotiations that may be transpiring, so past due notices may have gone out even when the bank had made arrangements for payment with the Stewarts.

DStewart has at times made interest only payments on this obligation with the bank's consent. According to DStewart, Drew sends payment requests to Raven Resources as payments become due and the Stewarts timely tender payment. Drew testified that the Stewarts have never been more than thirty days late with a payment and that the loan is current.

2. Loan #904200, the "Anderson Loan"

The Stewarts are borrowers on the "Anderson" loan which includes several properties owned by Oklamiss and P & P Acquisitions. The loan was for $2,400,000.00. They have received the same "Loan Past Due" notices from Kirkpatrick Bank on this loan. DStewart testified that, as with the Phoenix loan, Drew sends a notice when payment is due and payment is tendered. Additionally the bank is renewing the loan every thirty days.

3. Shimmering Sands Guaranty

The Stewarts guaranteed a $3,483,362.23 loan from Kirkpatrick Bank to Oklamiss. Shimmering Sands owns the property that is the subject of that loan. This obligation is contingent on the bank calling it when due. Drew testified that there has been no delinquency of more than thirty days on the loan and that they bank has made no demands on the guaranty.

4. Kansas House and Land Guaranty

DStewart is the guarantor on an $86,150.00 loan from Kirkpatrick Bank to Raven Operating. Drew testified that there has been no delinquency on this loan over thirty days and that no demand has been made on the guaranty.

Drew testified that Kirkpatrick Bank has a credit committee that would make decisions about joining an involuntary bankruptcy petition. Drew is on the committee and, according to him, the committee has not had a meeting about joining as petitioning creditors in the involuntary petitions against the Stewarts and does not plan to because the committee sees no reason to join the involuntary petitions.

c. Capstone Bank

On August 1, 2011, DStewart guaranteed a loan in the amount of $1,885,899.47 from Capstone Bank to ZLM Acquisitions. The guaranty provided that Capstone could enforce the guaranty without first going after the borrower. It further provided that "If a bankruptcy petition

6

should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me." In ZLM Acquisition's bankruptcy, schedule D indicated that the debt owed to Capstone was $1,835,065.00 and that the properties securing the loan ("Various lots in Block 5 of Chicago Gulf Beach Company Subdivision & various lots in Block 5, First Addition of Chicago Gulf Beach Company") were valued at $414,000.00 leaving a deficiency of $1,421,065.00. As of the filing of the involuntary petition, the debt owed to Capstone had not been satisfied.

DStewart is also obligated to Capstone for $783,274.90 on a promissory note. According to DStewart, as of the filing of the involuntary the full amount of this obligation was not due, but it will ultimately become due.

### d. Phillips Murrah

The Phillips Murrah law firm represented the Stewarts in Skipper's bankruptcy. They each listed an unpaid debt to the firm in the amount of $10,388.85. At the time the involuntary petition was filed, the Stewarts owed the firm for some outstanding legal bills. DStewart testified that he has paid Phillips Murrah around $40,000.00 over the last few years and that he did not realize he owed an outstanding obligation to them as of the filing of the involuntary petition. He also testified that he would have paid the outstanding bill, but Phillips Murrah has refused to accept payment due to the involuntary petition citing concern that the payment would constitute a preferential payment. TStewart testified that she was unaware that this bill was outstanding at the time the involuntary petition was filed.

### e. Aurora Settlement

Aurora Loan Services sued DStewart. The Armbrecht Jackson law firm represented DStewart in the matter. An attorney from the Daniell, Upton, and Perry law firm mediated the

matter for the parties and it settled. Attorney fees for Armbrecht Jackson and mediator fees for Daniell, Upton, and Perry were to be paid from the confidential settlement. The terms of the settlement were reached within the 90 period preceding the filing of the involuntary petition. The settlement has not been completed due to the bankruptcy.

At the time of the filing of the involuntary petition, the Stewarts' outstanding obligations on account of the Aurora suit included:

**Armbrecht Jackson LLP**—Legal bill for $151,168.55 which is due to be paid from a confidential settlement but has not been paid due to the filing of the involuntary. No demand for payment has been made.

**Daniell, Upton, and Perry**—Mediation fee in the amount of $3,961.13 which is due to be paid from a confidential settlement but has not been paid due to the filing of the involuntary. While the mediation invoice is outstanding, there has been no demand for payment.

In addition, DStewart listed a disputed debt to **Aurora Loan Services** in the amount of $1,259,900.00 which is to be satisfied from the confidential settlement. TStewart did not list Aurora Loan Services as one of her creditors.

### f. Other Creditors

The Stewarts jointly owe recurring debts to several creditors that are paid as they come due monthly, weekly, or at other regular intervals. At the time the involuntary petition was filed these included:

**Ono Island HOA**—Assessments in the amount of $3,106.00 which were current at the time of filing.

**Turtle Key HOA**—Assessments in the amount of $300.00 which were current at the time of filing.

8

**Ashford Hills HOA**—Assessments in the amount of $2,000.00 which were current at the time of filing.

**DirecTV**—Cable/internet bill in the amount of roughly $323.00 which was current at the time of filing.[2]

**Culligan Water**—Water bill in the amount of $45.79 which was current at the time of filing.

**Baldwin County Waste**—Utility bill in the amount of $127.35 which was current at the time of filing.

**Cella Martinez**—Housekeeping services in the amount of $300.00 which was current at the time of filing.

**Oklahoma County Treasurer**—Real estate taxes in the amount of $2,329.64 and $9,196.31 which were current at the time of filing.

**Shotts Marine Electronics**—Repair work in the amount of $425.00 which was current at the time of filing.

**Oklahoma Natural Gas**—Gas/electric service bill in the amount of roughly $100 which was current at the time of filing.[3]

**Orange Beach Water Authority**—Water bill in the amount of $30.48 which was current at the time of filing.

**City of Oklahoma City**—Water bill in the amount of $149.17 which was current at the time of filing.

**OG&E**—Utility bill in the amount of roughly $700.00 which was current at the time of filing.[4]

---

[2] The Stewarts each testified that this bill was current at the time of filing, but in their respective lists of creditors each listed a slightly different figure for this bill. The Court does not know how they got different numbers, but the discrepancy is not pertinent to the legal issues in this matter.
[3] *See supra,* note 2.
[4] *See supra,* note 2.

**Baldwin EMC**—Gas/electric bill in the amount of $527.00 which was current at the time of filing.

**Century Link or Century Tel Telephone**—Telephone bills in the amount of $72.70 and $50.00 for DStewart and TStewart respectively which were current at the time of filing.[5]

**Rodrigo Martinez**—Landscape architecture bills in the amounts of $2,100.00 and $600.00 for DStewart and TStewart respectively which were current at the time of filing.

**Gaillardia Country Club**—Country club dues and assessments in the amounts of $640.00 and $1,063.29 for DStewart and TStewart respectively which were current at the time of filing.

In addition, DStewart individually owes recurring debts to several creditors that he pays as they come due monthly, weekly, or at other regular intervals. At the time the involuntary petition was filed these included:

**American Express**—Credit card bill in the amount of $6,000.00 which was current at the time of filing.

**Baldwin County Revenue Commissioner**—Tax bill in the amount of $3,342.64 which was current at the time of filing.

**City of Orange Beach**—Utility bill in the amount of $30.00 which was current at the time of filing.

**A Plus Pest Control**—Pest control bill in the amount of $108.00 which was current at the time of filing.

**ADT**—Security system bill in the amount of $37.78 which was current at the time of filing.

**Oklahoma County Treasurer**—Real estate taxes in the amount of $225.34 which were current at the time of filing.

---

[5] DStewart's list of creditors identifies this creditor as "Century Tel Telephone" while TStewart's list of creditors identifies this creditor as "Century Link." The Court assumes that this is the same creditor since the P.O. Box number given for each is the same.

DStewart also listed several disputed, individual debts with irregular creditors that were allegedly owed at the time the involuntary was filed. These include:

**William B. Federman**—A $320,000.00 legal bill which DStewart disputes. The funds are currently being held in escrow until the dispute is resolved.

**Bank of America**—A promissory note in the amount of $315,797.26. DStewart testified that he is currently making interest only payments on this obligation, but will eventually owe the full amount.

**Park Cities/Interbank**—DStewart's contingent obligation on a $6,548,967.26 guaranty. The guaranty has not yet been called.

In addition, TStewart individually owes recurring debts to several creditors that she pays as they come due monthly, weekly, or at other regular intervals. At the time the involuntary petition was filed these included:

**Cox Communications**—Cable/internet bill in the amount of $178.03 which was current at the time of filing.

**Farmers Insurance**—HCA insurance in the amount of $6,894.81 which was current at the time of filing.

**Farmers Insurance**—Auto Insurance in the amount of $5,157.40 which was current at the time of filing.

**Agrilawn**—Quarterly lawn care bill in the amount of $250.00 which was current at the time of filing.

**New York Life Insurance**—Life insurance bill in the amount of $175.29 which was current at the time of filing.

**Dement Printing Company**—Printing bill in the amount of $398.18 which was current at the time of filing.

**Cockerell Dermatopathology, PA**—medical bill in the amount of $85.00 which was current at the time of filing.

**Glenn Koester, MD**—Medical bill in the amount of $43.98 which was current at the time of filing.

**RP Window Washing**—Household service bill in the amount of $100.00 which was current at the time of filing.

**Susan Shotts**—Household service bill in the amount of $100.00.

**Mollmans Water Cond.**—Household service bill in the amount of $45.79 which was current at the time of filing.

**Oklahoma Natural Gas**—Gas/electric bill in the amount of $51.86 which was current at the time of filing.

**B&J Carroll Water Well Service**—Equipment repair bill in the amount of $152.00 which was current at the time of filing.

**City of Norman**—Water bill in the amount of $124.05 which was current at the time of filing.

f. OklaMiss Transfer

A May 19, 2011 personal financial statement provided by the Stewarts to Kirkpatrick Bank—a financial statement made prior to the Oklamiss transfer—showed that the Stewarts owned 100% of the stock of Oklamiss Investments and that their net worth was approximately $19,000,000.00. Oklamiss is an entity that holds substantial real property interests in Indiana and Mississippi. After the Oklamiss transfer, a December 31, 2013 personal financial statement provided by the Stewarts to Kirkpatrick Bank showed that the Stewarts owned 2% of the stock of

Oklamiss Investments and that their net worth was approximately $312,446.00. In comparing the two financial statements, the significant decrease in net worth is largely attributable to a decrease in "oil & gas interests" on the assets side of the balance sheet—in 2011, the Stewarts had $20,704,800.00 in oil and gas interests while in 2013 they had only $4,800.00 in oil and gas interests. DStewart testified that while the value of Oklamiss's oil and gas interests decreased between 2011 and 2013, the decrease on the Stewarts' financial statement was primarily due to their transferring 98% of the stock of Oklamiss to their children.

On October 31, 2011, DStewart personally drafted and executed a transfer of 98% of the Stewarts' interest in Oklamiss to their three children in equal shares. TStewart also executed the transfer. While DStewart employed in house counsel and was in the habit of employing outside counsel on a regular basis, he did not use an attorney to draft the transfer; he did it himself.

DStewart testified that he decided to transfer the assets in light of advice he received from his tax professional. Specifically, DStewart anticipated changes to the tax code that would make it more difficult for him to transfer assets or make gifts to his children. In addition, TStewart testified that in the months leading up to the Oklamiss transfer DStewart experienced serious health complications. According to her, DStewart's health condition was, in part, what prompted the transfer, as an estate planning devise.

After the transfer, the Stewarts had the profits and losses from Oklamiss assigned to them. This assignment had the effect of keeping the new ownership arrangement "invisible." DStewart testified that he did not make the transfer with the intention of hiding assets from creditors. In fact, according to him, the transfer was communicated to Kirkpatrick Bank and to Park Cities. Further, he said he did not realize that the transfer would effect SEPH.  TStewart

13

also testified that she had no intention of hiding assets from creditors when she made the transfer.

## LAW

These cases were brought by SEPH pursuant to 11 U.S.C. § 303. SEPH alleges that each debtor has fewer than 12 qualifying creditors and, therefore, it can be the sole petitioning creditor. Section 303(b) provides that a petitioner must be a holder of a claim that "is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claim[] aggregrate[s] at least $15,325." SEPH has a claim that is undisputed as to liability due to Judge Butler's order and is undisputed as to at least "an 8-figure amount" due to admissions by the Stewarts' counsel in the litigation. The exact amount of the liability is disputed but the Court has already ruled that even the admission that a part of the debt is due is sufficient. It is not an "all or nothing" proposition. *In re Man Corp.*, 2014 WL 4346747 (Bankr. M.D. Pa. 2014; *In re Roselli*, 2013 WL 828304 (Bankr. W.D.N.C. 2013); *In re Miller*, 489 B.R. 74 (Bankr. E.D.Tenn. 2013; *In re DemirCo Holdings, Inc.*, 2006 WL 1663237 (Bankr. C.D.Ill. 2006). SEPH holds the requisite $15,325 in unsecured debt necessary to be a petitioning creditor.

The next issue is whether the Stewarts have fewer than 12 creditors. If they do not, then there must be 3 petitioning creditors and SEPH has not been able to find any other creditors to join its suit. Therefore, unless each debtor has 11 or fewer creditors, both petitions are due to be dismissed. This issue has divided the courts. Some courts hold that a creditor is any party that holds an unpaid debt owed by the alleged debtor on the date of the filing of the petition, regardless of amount or type of debt. *See Jefferson Trust & Savings Bank v. Rassi (Matter of Rassi)*, 701 F.2d 627, 631 (7th Cir. 1983). Other courts do not count de minimis debts. *See*

14

*Denham v. Shellman Grain Elevator, Inc. (In re Denham)*, 444 F.2d 1376, 1378 (5th Cir. 1971); *In re CorrLine Intern., LLC*, 516 B.R. 106 (Bankr. S.D. Tex. 2014). Others do not count "small recurring debts." *See In re Smith*, 123 B.R. 423 (Bankr. M.D. Fla. 1990). Still others do not count prepetition debts that are paid within a short time after the filing of the involuntary petition. *See In re Crain*, 194 B.R. 663 (Bankr. S.D. Ala. 1996). Finally, some courts do not count prepetition creditors whose debts are paid during the gap period—the period between the filing of the involuntary petition and the entry of an order for relief—if the debt is paid with property of the estate since such payments would constitute voidable transfers. *See In re CorrLine International, LLC*, 516 B.R. 106 (Bankr. S.D. Tex. 2014); In *re Atwood*, 124 B.R. 402 (S.D. Ga. 1991); *In re Roselli*, 2013 WL 828304 (Bankr. W.D.N.C. 2013). There is merit to most of these positions. In this case, which of the positions the Court takes will determine whether there is a viable petition or not.

After considering the cases cited above, the Court concludes that the position of Judge Shulman in *In re Crai*n and the case of *In re CorrLine* are the best law. The Court adopts their reasoning. The Stewarts each paid all but a small number of their debts owing at filing within the month after filing. As business owners, the Stewarts' income comes from their various business interests; they are not wage-earners. The business interests they held on the petition date are property of their respective bankruptcy estates. Income from those interests are proceeds of property of the estates. Therefore, the cash they used to pay prepetition debts postpetition was property of their bankruptcy estates. *See In re Corrline International, LLC*, 516 B.R. 106, 156 (Bankr. S.D. Tex. 2014) ("It is enough to say that any cash used to pay creditors following the Petition Date was necessarily an asset of the CorrLine bankruptcy estate or constituted proceeds from the disposition of an asset of the CorrLine estate."). Because these payments would

constitute voidable transfers, the Court will not count the prepetition creditors who were paid during the gap period. This result makes sense. The gap period is commonly used by a petitioning creditor to solicit other petitioning creditors. Paying off other creditors during this period defeats any incentive they might have to join the petition. In fact, it gives such creditors something to lose—a voidable transfer—should the bankruptcy proceed. It could also be argued that most of the paid creditors were small recurring debts that should not be counted as well. When creditors holding voidable transfers are omitted from the numerosity analysis, TStewart had not more than three creditors and DStewart had not more than five creditors.

Since SEPH has met its burden of showing that it can be a sole petitioning creditor, the Court must now decide whether the Stewarts were each "generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1). The burden of proving this fact is on SEPH by a preponderance of the evidence. *In re Fallon Luminous Products Corp.,* 2010 WL 330222 (Bankr. E.D. Tenn. 2010).

The courts look to a number of factors in determining whether a debtor is generally paying his or her debts. COLLIER ON BANKRUPTCY "condenses" the factors into the following list:

> The number of debts;
>
> The amount of the delinquency;
>
> The materiality of the nonpayment;
>
> The nature and conduct of the debtor's business.

¶ 303.31[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). *See also In re Fallon Luminous Products Corp.,* 2010 WL 330222 (Bankr. E.D. Tenn. 2010).

TStewart is paying all of her debts except SEPH, Kirkpatrick Bank and Phillips Murrah. The Court is not counting Phillips Murrah as a debt not being paid because Ms. Stewart and her husband tried to pay it, but Phillips Murrah rejected the payment. The Court is also not counting Kirkpatrick Bank because the president of the Bank indicated that, although late on occasion, payments were made each time the loans were due and the loans were actually being extended. If there is any default in payments, from the banker's testimony, it is clear that the Bank has waived it. There is no question that the debt to SEPH is large and the Stewarts have admitted liability, but the case is still in litigation as to the exact amount owed. It is, however, 78.5% of the debtor's unpaid debts. TStewart has paid all of her recurring obligations every month. However, when the SEPH debt is fully liquidated, it is clear that she will not be able to pay that debt in full immediately. *See In re Fallon Luminous Products Corp.,* 2010 WL 330222 (Bankr. E.D. Tenn. 2010) ("[W]here a debtor fails to pay even one debt that makes up a substantial portion of its overall liability, a court may find that [it] is generally not paying [its] debts . . . . [W]hether [a debtor's] past due debts are substantially large in comparison to its assets [is a] relevant factor[]."). It is a close call, but the Court determines that TStewart is not generally paying her debts as they come due because of the SEPH debt.

DStewart has more debts due than TStewart. He has not paid the Kirkpatrick Bank loans or Phillips Murrah debt, but, for the same reasons the Court did not determine that they meant that Ms. Stewart was not generally paying her debts when they became due, the same reasoning holds for Mr. Stewart. Mr. Stewart also has other debts not paid. There is a contingent Kirkpatrick Bank debt of $2,483,362.23 that even SEPH indicated was contingent so that debt is not considered to be due. A guaranty to Capstone Bank is due in the amount of $2.1 million. ZLM Acquistions is in default on $1.8 million of the underlying debt and the guaranty provides

17

that the guaranty is due upon the principal's default. The Capstone Bank debt of $783,000 is also due and not paid. Although the lender has not sought collection, it is due and unpaid. *See In re Fallon Luminous Products Corp.,* 2010 WL 330222 (Bankr. E.D. Tenn. 2010) ("The bankruptcy court considers the proportion of the debt being paid . . . and should include creditors who are not currently pressing the alleged debtor for payment, if their debts have become due.") (internal citations omitted). Bank of America is owed $315,797.26 and that debt is due and unpaid. *See id.* SEPH is due at least $10,000,000 and is not paid. His unpaid debts that are not waived or unpaid for a reason are over 80% of the amount he owes. Due to the fact that Mr. Stewart has 3 large creditors that are unpaid (SEPH, Capstone Bank and Bank of America) and that the SEPH debt is a substantial amount of his overall debt, the Court concludes that he is generally not paying his debts as they become due. The number of debts is small, but the amount of the delinquencies is large as is the materiality of the nonpayments. Further, some of the debts are guarantees of obligations that are not likely to be paid by any source but DStewart and/or his co-guarantors. According to DStewart's 2013 balance sheet, he cannot pay all of the debts.

Even though there is only 1 petitioning creditor, SEPH also asserts that there is cause to leave the involuntary cases pending because there are "exceptional circumstances." *See In re Crain*, 194 B.R. 663, 668 (Bankr. S.D. Ala. 1996). Exceptional circumstances include situations where a creditor has no other avenue to pursue for collection of its debt under state or federal law or where "there is 'a showing of special circumstances amounting to fraud, trick, artifice or scam.'" *In re Fischer*, 202 B.R. 341, 346-47 (E.D.N.Y. 1996). SEPH cites to the Stewarts' transfer of most of their interest in Oklamiss to their children in October 2011 as evidence of such a "special circumstance." From the limited evidence presented, it appears the transfer did

substantially deplete their assets. Whether the transfer is actionable or not remains to be seen, but SEPH argues that, if it is recoverable, it should be available to all creditors and a bankruptcy would provide for that. Although not a major reason for this Court's ruling, entry of an order for relief will allow a trustee to explore this issue.

    IT IS ORDERED that:

    1.    The motions of the alleged debtors to dismiss their cases are DENIED; and

    2.    Orders for relief under chapter 7 shall be entered in each of the debtor's cases.

Dated:   March 18, 2015

*/s/ Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE